## ANNA E. P. HARRIS v. R. HANSON and Others.[1]

July 19, 1912.

Nos. 17,620—(168).

**Foreclosure of mortgage — decision sustained by evidence.**

Action to foreclose a real estate mortgage, which the defendants claimed had been paid. The trial court so found, and as a conclusion of law judgment was directed for them. *Held*, that the finding was justified by the evidence, that the conclusion was correct, and, further, that there were no errors in the rulings as to the admission of evidence.

Action in the district court for Clay county to recover $2,000 upon a mortgage, together with an attorney's fee, and for a sale of the mortgaged premises to pay plaintiff the amount claimed. The answer of defendants Hanson alleged that the premises were conveyed by them to one Poehler, that he assumed and agreed to pay the mortgage, and that he conveyed the property to defendants Year and Martin. The answer of defendants Year and Martin alleged that Philip Allen, Jr., was appointed one of the executors of the estate of Elizabeth Necollins about July 1, 1904; that on May 27, 1909, these defendants paid the note to said Allen, without knowledge or notice of any defect of title or authority in Philip Allen, Jr., to receive said payment; that the note and mortgage were then and there delivered to defendants, and a satisfaction of the mortgage. The case was tried before Taylor, J., who made findings and conclusions of law as stated in the opinion. From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Edgar E. Sharp,* for appellant.

*James D. Denegre* and *Engerud, Holt & Frame,* for respondents Year and Martin.

*Christian G. Dosland,* for respondents Hanson.

START, C. J.

Appeal by the plaintiff from a judgment of the district court of

[1] Reported in 137 N. W. 166.

the county of Clay in an action to foreclose a real estate mortgage which the defendants claimed had been paid. The action was tried by the court without a jury, and findings of fact made to the effect following:

On March 17, 1902, the defendants R. and Gunil Hanson executed to Frank O'Meara their promissory note for $2,000, due in five years, with interest at six per cent, payable annually, and secured the payment thereof by a mortgage, duly recorded, on a quarter section of land in the county of Clay then owned by them. On March 20, 1902, O'Meara sold and assigned the note and mortgage to Mrs. Elizabeth Necollins, of Mineral Point, Wisconsin. The contract for the sale and purchase of the mortgage was not made with Mrs. Necollins personally, but with her agent, John Allcock, of Platteville, Wisconsin, and her nephew, W. J. Jennings, of the same place. The note, mortgage, and assignment were delivered to Allcock as such agent, and O'Meara received from him the purchase price thereof. The assignment was duly recorded. All subsequent transactions between O'Meara and the several owners of the note and mortgage were with Allcock only, and in the belief that he had full authority to act for them. On July 17, 1902, the mortgagors, R. and Gunil Hanson conveyed the land to the defendant Poehler, of Iowa, who assumed and agreed to pay the mortgage. On September 21, 1908, he conveyed the land to the defendants Year and Martin subject to the mortgage. On January 12, 1904, Mrs. Necollins died testate. Her will was duly admitted to probate in the county court of the county of Iowa, Wisconsin, on June 28, 1904, and Philip Allen, Jr. and W. T. Jennings were duly appointed as executors thereof, and letters were issued to them. A final decree in the estate was made July 5, 1905, whereby the residue of the estate, in accordance with the terms of the will, was assigned to Allen and Jennings as trustees for the plaintiff and her brother until they respectively should attain the age of twenty-one years.

During all the times herein stated Allen was the vice president and managing officer of the First National Bank of Mineral Point, and

continued so to be until its failure as hereinafter stated. The securities belonging to the estate and the trust fund, including the note and mortgage in question, were kept in the vault of the bank in a tin box belonging to Allen, the key to which was kept by him. After the trust terminated, and on December 17, 1906, the trustees had a full accounting and settlement with plaintiff of all the matters pertaining to the trust, and received from her a receipt to the effect that she had received from them the sum of $13,383.40 in full settlement of the amount due her. The plaintiff at the time of such settlement received from Allen a receipt, signed by him, as "Phil Allen, Jr., Vice Pres.," for securities for safe-keeping aggregating $12,500, which included the Hanson note and mortgage. Never at any time prior to the failure of Allen and the bank did plaintiff examine such securities or take the same into her physical possession, but during all such time she permitted the same and all thereof to remain in the bank in the tin box belonging to Allen, and to which he alone possessed the key. Other than this, the note and mortgage were never assigned or delivered to her.

Until March, 1906, all interest on the note and mortgage, as it became due, was paid by the respective owners of the land to O'Meara, who forwarded it to Allcock. Allcock paid it to Jennings, and received from him the interest coupons. After the last date Jennings moved from Wisconsin, and directed Allcock to remit the interest, when paid, to Allen, which was thereafter done. When the mortgage became due in 1907, Poehler requested an extension, and it was granted by Allen, through the medium of O'Meara and Allcock, each of whom knew that Allen was such executor. The interest coupons taken on the extension were paid as they became due to Allen, through O'Meara and Allcock. When the note and mortgage as extended became due, the then owners of the land, the defendants Year and Martin, applied to O'Meara for a further extension, who sent the application to Allcock. Allcock then sent it to Allen, who refused to grant it.

Thereafter, and on May 19, 1909, Year and Martin caused to be forwarded to O'Meara the full amount due upon the mortgage, which was received by him, who prepared a form of satisfaction of the mortgage for execution by Allen as administrator of the estate of Necollins,

deceased, and forwarded the same, together with the money, to All-cock, who transmitted by mail the satisfaction to Allen, with a request to execute, acknowledge, and return it, with all the papers to him. Upon the receipt of the satisfaction, Allen executed it as executor of the estate of Mrs. Necollins, and forwarded the same, together with the note and mortgage, the assignment thereof to Mrs. Necollins, a certified copy of the letters testamentary issued to himself and Jennings as executors of her estate, and the abstract of title to the State Bank of Platteville, accompanied by a letter whereby he directed the bank to deliver all the papers to Allcock upon payment by him of $2,020.58. This amount Allcock paid to the bank, and received from it all the papers and forwarded them to O'Meara, who delivered them to Year and Martin.

Prior to the year 1907 Allen had been discharged as executor of the estate of Mrs. Necollins and as trustee of the property of plaintiff, and when he made the agreement extending the time for the payment of the mortgage, and also when he executed the satisfaction thereof, he had no authority, either as executor or administrator of the estate of Mrs. Necollins, deceased, or as trustee of property of plaintiff, to execute the same, or either thereof. The plaintiff never at any time, prior to the failure of the First National Bank of Mineral Point, had any notice or knowledge that Allen ever assumed or pretended to act as executor or administrator of the estate of Mrs. Necollins, or as trustee of any property of plaintiff after he had been discharged as such trustee in December, 1906. Prior to the failure of the bank the plaintiff had never examined said note and mortgage, and did not know when they became due, nor that Allen had assumed to extend the time of payment thereof, nor that the same had been paid, nor that Allen had assumed to execute a satisfaction of the same. On the other hand, neither Allcock nor O'Meara, nor any of the defendants herein, had any notice or knowledge that Allen had been discharged as executor of the estate of Mrs. Necollins, or that he had been either appointed or discharged as trustee of property of plaintiff herein, or that the note or mortgage had been transferred to or become the property of plaintiff, until after the failure of the bank. Allcock, O'-Meara, and each and all of the defendants herein believed in good

faith that Allen was the executor or administrator of the estate of Mrs. Necollins and had full authority to act as such. All the transactions of each and all the defendants concerning the note and mortgage were had with O'Meara only, and with no one else, and in good faith in the belief at all times on the part of each and all the defendants that O'Meara was the agent of, and had full authority to act for, the holder of the note and mortgage.

All the payments upon the note and mortgage received by Allcock subsequent to the year 1905 were paid over to Allen in the belief that Allen was still the executor or administrator of the estate, and when the interest and the principal were so paid the coupons and the note and mortgage were surrendered. The plaintiff, except as hereinbefore stated, left her securities with Allen, as vice president and managing officer of the bank, for the purpose of collecting the interest thereon as it became due and credit it to her account with the bank. All of her transactions with the bank were with Allen, and no one else, and with her full knowledge he collected the interest on the note and mortgage and credited the same to her account on the pass book. The matter of his collecting or receiving payment of the principal of the securities was never referred to by either of them; but he collected $300 of the principal of one of the securities, other than the one here in question, with her full knowledge, and without objection. Allen never credited the plaintiff's bank account or paid to her the amount of the note and mortgage so paid to him, but converted it to his own use or that of his bank, which became insolvent and failed. Both it and Allen are still insolvent.

The trial court, as a conclusion of law from the evidentiary facts, stated, found that the note and mortgage had been paid, and directed judgment for the defendants. The finding that the note and mortgage had been paid, although expressed in the conclusions of law, is a finding of the ultimate fact of payment.

The plaintiff's assignments of error are logically divided into three groups, and raise the questions: Did the trial court err in its rulings as to the admission of evidence? Are the evidentiary facts found jus-

tified by the evidence ? If so, do they sustain the finding of the ultimate fact of payment and the conclusion of law ?

The alleged errors as to the admission of evidence are based upon the rulings of the court in receiving evidence on behalf of the defendants tending to show payment of the note and mortgage. The plaintiff's contention is that all the transactions shown by the evidence were without her knowledge, consent, or authority; hence it was error to receive the evidence. The very purpose of the evidence, direct and circumstantial, offered and received, was to show payment under such circumstances as to bind the plaintiff. We are of the opinion that the evidence was properly received, as it tended to show such a payment.

The plaintiff also contends that the trial court's finding that the plaintiff permitted her securities to remain in Allen's exclusive possession is not sustained by the evidence. Her testimony as to this particular matter must be considered in connection with the evidence as to her own acts, and Allen's, so far as she had knowledge thereof. Upon a consideration of the whole evidence, we are of the opinion that all of the findings of evidentiary facts, which the plaintiff here challenges as not justified by the evidence, are fairly sustained by it.

The last question to be considered, and the important and controlling one, is whether the evidentiary facts found justify the finding of fact and conclusion of law that the note and mortgage had been paid. This question was exhaustively discussed in the briefs of the respective counsel, which we have attentively considered. We do not, however, deem it necessary or advisable to discuss in detail all of the propositions of fact and law urged on behalf of the plaintiff.

The contention of the plaintiff that the note and mortgage were left by her with the bank, not with Allen, for safe-keeping, and that he stole them and received the principal thereof without any authority from her, is not sustained by the record. The note and mortgage were left with Allen as vice president of the bank; but this is not of controlling importance, for it is clear, both from the evidence and the findings of fact, that Allen, either personally or as vice president of the bank, was, with full notice and knowledge of the plaintiff, the

sole individual or officer who received them and was authorized to transact the business connected therewith. Either personally or as an officer of the bank, he had exclusive possession of the securities to the knowledge of the plaintiff, and the fact that they were in the custody of the bank was not known to any of the defendants. There is neither evidence nor finding that Allen stole the securities from the bank or any one else. It is true there was an immaterial finding to this effect: The details concerning the failure of the bank are not made clear by the evidence. It, however, appeared that Allen, in popular parlance, wrecked the bank and is now serving a sentence of imprisonment for having violated the Federal banking laws. This falls short of a finding that he stole the securities.

It is conceded by the defendants, as it must be, that there was no express authority given Allen to receive payment of the principal of the note or mortgage. Nevertheless the fact remains that the evidence and evidentiary facts found justify the conclusion that she conferred upon Allen complete apparent authority to receive such payment, and, further, that the defendants were fully justified in acting thereon and paying the principal to him upon the delivery of the securities and a satisfaction of the mortgage sufficient upon its face.

The suggestion that the defendants were negligent in the premises is without merit. The defendants had no notice or knowledge of any kind that the plaintiff owned the note and mortgage, as she placed nothing on record to show that she had any interest therein, nor did she give any notice of any kind that she owned the securities.

We accordingly hold that the findings of the ultimate fact that the note and mortgage had been paid is sustained by the evidence, and that the trial court's conclusion of law was correct.

Judgment affirmed.